The last case we will hear for oral argument this morning is 20-3186, Sumpter v. State of Kansas. Counsel for the appellant, Mr. Wired, would you make your appearance and proceed? Thank you. Good morning, Your Honors and Counsel. My name is Curtis Wired and I represent the State of Kansas in this matter. I'd like to reserve three minutes for rebuttal. There are two main points on appeal. The State's primary point is that the District Court erred by failing to apply epideference to the Kansas Court of Appeals decision. In refusing to do so, the District Court below simply concluded the issue is not whether the evidence was legally sufficient, the issue is whether there is a reasonable probability of a different outcome. But as this Court has repeatedly stated, when a habeas petitioner alleges that trial counsel or appellate counsel, in this case as well, is ineffective for failing to raise a particular issue, the reviewing court, quote, must look to the merits of the omitted issue. And if the omitted issue is meritless, then the petitioner has suffered no prejudice. And as the Supreme Court stated in Strickland, the governing legal standard plays a critical role in defining the question to be asked and assessing prejudice from counsel's errors. In other words, addressing the merits of the underlying claims is the means by which a reviewing court determines whether there's a reasonable probability of a different outcome. The reasonable probability... Counsel, could I just, on that first point, the sufficiency of the evidence standard asks whether any reasonable jury could find guilt beyond a reasonable doubt, drawing all inferences in favor of the government. That isn't the same standard as the Strickland prejudice standard, which asks whether there was a reasonable probability of a different outcome. In particular, the evidence is looked at differently under the sufficiency of the evidence standard. When we have cases that challenge sufficiency of the evidence, we look at it in light most favorable to the government. But you don't do that, do you, under the prejudice standard in Strickland? So isn't there some daylight between the standard that the Court of Appeals, the State Court of Appeals used and what Strickland requires? Yes, I understand the differences in the standard. There could be some tension viewed there. But at the same time, the Court of Appeals had to have some kind of legal rubric to determine whether there was a reasonable likelihood of a different result. If not, then the court is left asking in the abstract, looking at the evidence, well, do we just decide whether there's a reasonable likelihood of a different result? Our position is that that's impossible to do on its own. There has to be an underlying legal standard for the court to apply, which is what was stated in Orange and other opinions from this court, that you look at the underlying issue. Let me ask you, what is your position on the underlying premise of Judge Matheson's question? I mean, you should pick up a little drone, please. Yes, yes. I'm sorry. What is your view? I mean, if this has been a ineffective assistance of counsel claim, not with the underlying basis being sufficiency of the evidence, some other kind of ineffective assistance of counsel claim, if we were applying at the deference, we would still look at the facts that the state's highest court found, right? And we would presume those facts to be correct. Correct, Your Honor, yes. OK, let me let me ask you a question on the sort of unique nature of the ineffective assistance of counsel claim we have here. This claim has embedded in it, at least as I read the briefing, it was crystal clear that the underlying basis for the ineffective assistance is the fact that there was not sufficient evidence. In other words, counsel was ineffective because counsel did not object to the fact that the evidence was inefficient, insufficient. That being the underlying basis. Well, this question I would ask is, in a situation like that, we are applying the federal overarching standard of sufficiency of the evidence, right? The Jackson versus Virginia standard. That's the standard in which we evaluate what the the state court did. Correct, Your Honor, and in fact, in my answer below, when I was drafting it, I cited both for the controlling federal law, the Strickland standard and the Virginia, the Jackson standard as well. OK, OK. And so so in this situation, I take it from the briefing and from that the the point is, at least your position would be that the court wants in evaluating the merits of the issue, the issue that was the basis for the ineffective assistance. The Kansas Court of Appeals essentially said because there was sufficient evidence, because there was sufficient evidence, a reasonable there would not be a likelihood reasonable probability of a different outcome, even if even if counsel had objected to the sufficiency of the evidence. Correct, Your Honor. That's that is our position. OK, let me let me ask you a more particularized question. And this relates to force. What is the force? Was there force associated with Mr. Sumter's use of the dangled keys in front of her, in your view? Because the standard is confined through use of force, right? Confinement by force. What's the force associated with that? Correct, Your Honor. We believe that the force that was applied is the force that was identified by the Kansas Court of Appeals in this case, which was during the struggle, the initial struggle before the victim was choked unconscious. She was swinging her fists. And in one hand, she had her keys. He ripped the keys from her hand. The ripping and taking the keys from her and then throwing them out the window was the force. And then the Court of Appeals stated that that force, that the withholding of the keys highlighted the fact of the earlier force. So the force that we're relying on in a de novo review would be would be that removal of the keys from her hand. Whoa, whoa, whoa, whoa. I think you may have misspoken de novo review. We're not doing de novo review, right? Under your view, we're doing it at the deference to what the state of Kansas did. Correct, Your Honor. I'm sorry. I didn't. Analytically, I was jumping ahead to if we were to look specifically at the force under a de novo review. Yeah, I don't think that would serve you well, at least initially. And so right now, so so the point would be that the Kansas Court of Appeals discern confinement by force through these two by the action. So I thought that the its decision on that element, the sufficiency of that element turned entirely on the conduct outside the car. Am I wrong in that? I thought that they didn't focus on the conduct in the car, either the choking or any of that stuff. They focused on the conduct outside the car. In other words, what he did, he confined her by making her essentially a captive in the car. What am I wrong about that? No, I mean, there is some there's back and forth, depending on which decision you're looking at, where the force is being applied. OK, well, that begs the question. I mean, under the deference, we are only if until we determine the Kansas Court of made an error of law, OK, clearly, you know, clear, contrary to clearly established law before we find that they violated that under at the deference, we're looking at the Kansas Court of Appeals opinion only. Right, right. That's our position. OK, well, I think that's the law. And so on on that opinion only, did the court focus on the conduct outside of the car? I think it focused on both the conduct inside and outside the car. I believe the words that were used by the court of appeals was after he had taken the force applied inside the car, taking the keys from her hand and throwing them out of the car was later highlighted. I believe the word highlighted was used by the Kansas Court of Appeals to to demonstrate, to remind her that she had been confined in the car. And so that that force itself, I think you could argue both the force of withholding the keys outside of the car and the force inside the car combined meets the four standard for kidnapping. OK, so you're saying that there was a dimension of force associated with withholding the keys itself? Yes. OK, I let me let me ask this question. If let's say we we get to the point where we say there was no error, the principal legal error that is claimed here, I think it's the notion that the district court, I mean, that the Kansas Court of Appeals disregarded Strickland and applied a plain sufficiency of the evidence standard. And that was legal error. That was wrong. That's what I understand to be the contention here. Is that your view? I mean, that's the you mean, the alternative. I'm not saying you accept that. I'm saying that my understanding of where the thrust of the contention of that the district court made was Kansas Court of Appeals erred because they can they essentially applied a sufficiency of the evidence standard when they should have applied Strickland. Correct, Your Honor, I read the district court opinions below to say that the reasonable likelihood of a different result was substituted with the sufficiency of the evidence standard. And our argument is that those two are combined. OK, got it. Now, let's assume that we for the moment, just because I want to play this out, let's assume that we disagree with that. So we're still under at the difference. Then the next point comes, who construed do we defer to Kansas Court of Appeals interpretation of bugs? And the answer presumably is yes. And if we do that, is it essentially game over then? I mean, is there anything else to talk about? In other words, if the Kansas Court of Appeals says we and the court had a lot of language about how this is sort of a case specific analysis and all that kind of stuff. And then it said we apply bugs and we say in bugs, the confinement factor was satisfied here. Is there anything else for us to talk about? No, Your Honor, I think that's an independent determination that could be made by this court. At that point, you could you could simply say that is one of our arguments that this decision was a particular application of a Kansas statute based on Kansas appellate law to reach a certain result to determine whether these actions constituted kidnapping under Kansas law. And therefore, this, in our view, is a simply a state law decision. And a federal habeas court cannot review that state law determination. You mean they can't review the and say, well, the Kansas court was wrong in its interpretation of Kansas law. Correct. Well, and that's it seems like we're talking about two kinds of deference. There's a deference, but there's also deference to state court determinations of state law, which the Supreme Court said in Estelle, we we owe that deference. Your last point, I think, concerns that second type of deference. If I got that. Correct, correct, correct, Your Honor, if we if we move past just the straight for the initial head for deference, we're talking about deference to state law. And of course, there are there's deference under factual findings, which we make in our brief as well. I need to ask you about that. So you argue that the Kansas Court of Appeals correctly determined that Mr. Sumpter confined the victim. Is that a finding of fact or a conclusion of law? We believe that it's a finding of fact, because under Kansas law and a state habeas action and this procedural posture, when a 15 or seven or a state habeas decision is made without an evidentiary hearing, it goes to the Kansas Court of Appeals or the district court. So the Kansas Court of Appeals reviews the record as a whole and determines on makes a de novo determination. OK, so now I'm going to circle back to where we started, which is if it's a finding of fact, why would we owe deference to that finding of fact if the Kansas court reviewed the facts in the light most favorable to the government under the sufficiency of the evidence standard? Well, the few things I mean, the district court below at the state district court level did not make the finding of fact that was raised in the Kansas Court of Appeals. And then our argument would still be that the Kansas Court of Appeals. Did not. Sorry, let me gather my thoughts here. The. The presumptive, the reasonable likelihood of a different result standard is still being combined with the sufficiency of the evidence, and since that factual determination was not made below, they're not they're not shading it one way or the other. The Kansas Court of Appeals is doing a fresh look through the record to find evidence that the that the district court below simply missed. I see that I'm almost out of time. I'd like to reserve as much as I could for a bottle. There are no other questions. Well, we'll allow you some rebuttal time so you can be sure to that. So we'll hear now from the petitioner. At the. May it please the court. My name is Ruthanne French Hudson, and I represent the petitioner appellee Timothy Sumter. There is no doubt that Edna provides only narrow circumstances for federal courts to grant relief from state convictions, but this court has already decided what the Kansas Court of Appeals did here. The use of a sufficiency standard to test the prejudice of ineffectiveness of trial counsel is contrary to established Supreme Court law. And Neumiller, this court held that prejudice under Strickland does not turn on a sufficiency of the evidence analysis. For this reason, Judge Lundstrom appropriately applied to Novo Review and is holding up ineffective assistance of counsel as well supported factually and legally. So counsel, what case did you just mention? I didn't hear you. I'm sorry, that's Neumiller v. F. Third one one seven eight. It was decided in twenty seventeen. Thank you. What let me ask this, what I understand the notion that you cannot substitute sufficiency of the evidence for the prejudice standard under Strickland. But all throughout this litigation, the predicate for your ineffective assistance was that there was insufficient evidence. Therefore, counsel should have done something about it. Counsel should have objected. Well, that brings to the core that is the merits issue. Was there really a meritorious issue to object to? And how do you go about determining whether there was a meritorious issue to object to when the issue in question is sufficiency of the evidence without saying, well, if there was insufficient evidence, there was not a meritorious issue to object to. Therefore, there was not an effective assistance. How else do you do that? I think there are two questions there. The first is, I think, an incorrect reading of what we have been objecting to all along. I do agree that if nothing else, as counsel for the state noted, you do have to look to the merits of a defense. And so throughout both state and federal proceedings, we have noted that this is one, as the state found, an unusual case. There has never been any finding by state courts that there is overwhelming evidence here. Instead, there is strong arguments based on Kansas case law that could have been developed and deployed both evidentially in argument, in jury instructions and in the sufficiency of the evidence that we're considering. Counsel, what is the issue you're getting? The Kansas Court of Appeals specifically found. That something did throw the keys out of the window and he himself testified that he threw them out of the door. Now, the Kansas Court of Appeals also concluded they stated this Strickland standard and then they went beyond once they established that, then they began their analysis after the district court here ended its review. And concluded that if the trial evidence legally supports the jury verdict. Then the conviction that defendants arguments founder on the prejudice prong of Strickland, because there's no way a big defense would have prevailed or could have even been given to the jury under the facts. I think that's the position that the state court took. And that doesn't say that they did not, that they abandoned the Strickland standard. They merely went beyond the initial standard to determine what, if any, prejudice would have occurred. That's maybe assuming a couple of things. The first is that the evidence would not have been developed any differently if counsel had done any investigation of the law. We know that she did not understand it because she told the jury that the facilitation elements, the intent element under Buggs, meant that all the state had to prove was that Sumter had an intent to have sex with the victim. Oh, that is very different. But that's not what the court instructed. And that's not what the Kansas court found. Correct. She was telling the jury how to interpret that facilitation element. And the jury was never told, as the Kansas Court of Appeals has recommended, that when there is a facilitation issue in play, the jury should be instructed on what Buggs requires. She never requested that Buggs instruction. And there's no... She has no basis to request anything. She's a witness. So it's up to the defendant, I guess, if you wanted to proceed to show that there was merit to his position and the Kansas court found there wasn't it. So it's foolish to even raise it. I don't know if we're foolish when all of the acts that were relied on by the prosecutor during the trial were later withdrawn as being insufficient under the jury instructions or under Buggs. And so there's a reasonable probability that had there been a proper instruction and argument to the jury, insufficiency of the evidence doesn't tell us how the jury would have reacted had they been properly instructed, if the trial counsel had argued properly. And as we point out in our brief, if they had heard evidence actually developed on these points. Well, that raises an interesting point. I mean, I read your argument below. I mean, before we get to the state court. And I don't... When you raise an ineffective assistance of counsel claim, you can slice that bologna a lot of ways and have multiple claims. I don't see multiple claims. There wasn't a distinct ineffective assistance because of the jury instructions. Ineffective assistance because of lack of investigation. And there isn't that. All there is, is this ineffective assistance of counsel claim, which seems to be entirely bottomed on whether the evidence was sufficient or not and whether Buggs, whether there was sufficient evidence under Buggs. And if that's the argument that was made below. And of course, we can confirm that. But my reading of it initially shows that you didn't make distinct arguments on these other points. And our law is pretty clear that you have to do that. If you have not made distinct arguments for ineffective assistance, they didn't present jury instructions on Buggs, the ineffective assistance, the counsel didn't investigate enough on Buggs. If you don't have that and all you say is there was insufficient evidence under Buggs, then that's it. You're done. You're stuck with that argument. So where where would I find these distinct arguments that you're talking about relative to ineffective assistance of counsel? And now, no, they have to have been made to the state court. And I read the argument in the state court. I didn't see it. Correct. So I would urge you to look at it looks like it's on joint opinion. That's volume four. It starts around page 566 and then goes. Through. Five, seventy nine, and I could pull out. Each of the times. Well, don't take all of your time, but you can you can give me that argument you want to OK. I do think that that is that is key is that there has from the beginning and I'll also see if I can find the petition itself where we also talk about these. But we had to look to the merits. You have to look at is there something on the record that would make this meritorious? I don't disagree that that we did at all times, you know, note that there is not something that possibly could have even brought a Jackson claim, but at least should have had trial counsel testing it through the adversarial counsel. Could I just ask you whether you are disputing any of the facts that the Kansas Court of Appeals relied upon for its decision? In other words, taking the keys, throwing them out the window, dangling the keys. Do you dispute that factual scenario? There is questions and ambiguity on the record about how the keys got out of the car. There is also no evidence on what was done to facilitate. I believe all the evidence on the record was the keys were taken as part of the fight. Well, well, now that you're you're it seems to me you're you're responding by saying that there may have been more. There may have been more evidence that could have been developed, but I'm only asking you whether the facts that the Kansas Court of Appeals relied upon. Do you have any dispute with those facts that the keys ended up outside of the car, that Mr. Sumter stood outside of the car with the keys? I do not dispute those. All right. And if those facts are undisputed, then under Estelle, don't we have to defer to the Kansas court's state law legal determination that there was confinement by force? We as the court pointed out, they were not making any kind of broad statement on whether this was on a general rule of law. They were simply making kind of a mixed conclusion of of law. In fact, that this in this case would be sufficient evidence. Well, they also were not they were applying bugs and they talked at length about how this is a case specific matter and they applied bugs. And so they said Kansas law bugs in this case means X. So why don't we have to defer to that? You you may on the sufficiency of the evidence, but that's not what a jury decides, a jury doesn't just limit its view to only the evidence viewed in the light most favorable to the state. All inference is taken for the state. A jury would get to decide. Look at the totality of the evidence. We have no finding on what would happen for a jury. Was there enough overwhelming evidence that there's no reasonable jury could have ever found the other way? We just simply have a sufficiency holding. So we have evidence that no reasonable jury could find the other way. That's not even the Jackson versus Virginia standard. The standard is can't a reasonable jury support this verdict? So, I mean, that that means is there the bare minimum amount of evidence that a reasonable jury under the law could support the verdict? And I'm looking at page 563 of your brief, and it is and as a result, fail to challenge the sufficiency of the state's evidence at every phase. That is issue one. That's how that issue is titled. And throughout that issue, yes, you talk about the fact that the the the defense counsel didn't understand bugs, but it was all but the result line, the tagline there is sufficiency of the evidence. And that's exactly what the Kansas Court of Appeals did. They viewed that argument, read it the way I read it, which is what you're challenging is that a reasonable counsel who understood bugs. Would have challenged the sufficiency of the evidence and what the what the Kansas Court of Appeals said was, well, we understand bugs and bugs. A reasonable jury under bugs could have found this verdict. Why don't we defer to that? I think, you know, with all due respect, I think there was a lot more if you go to page 568, the fact that the trial counsel was telling the jury that there was a different standard that had to be met, that all they had to do was find that there is an intent to have sex on Mr. Sumpter's part, evidence that she elicited. And this is closer to the Fisher v. Gibson, where what trial counsel was eliciting was actually evidence that would assist the state in approving what they needed to prove rather than putting the state's evidence through adversarial testing. I guess what my point is, this is our case law is pretty clear that you can't just make a a a a a broad ineffective assistance of counsel claim and throw a bunch of stuff in it. You have to discreetly define what is the basis for the ineffective assistance. So, for example, in this case, one could have made a discreet claim that counsel submitted instructions that were wrong on bugs and therefore he prejudiced my client or discreet claim that counsel did didn't investigate sufficiently the issue here. That's none of that is done. I mean, you make arguments about the ignorance of defense counsel in the connection with this claim about sufficiency of the evidence. But that could naturally be read as just supporting your argument that the evidence was insufficient and nobody did anything about it. And I think that's how the Kansas Court of Appeals read it, that nobody did anything about it. And what the Kansas Court of Appeals would say is, well, the evidence was sufficient under bugs, so there's no harm. So my point is simply how why can one discern from that discreet elements of ineffective assistance beyond a challenge to sufficiency of the evidence? I think you can go back to Fisher v. Gibson on what on the identification of issues as well. I think there is much more identification of issues here than there was in Fisher v. Gibson. They failed to advocate at every level and then they read in a whole bunch of other errors. We actually went through and identified them all. If you look at page 571, counsel's ignorance meant that she failed to properly challenge the state's testimonial evidence through cross-examination for admission of alternative evidence. And she failed to highlight the weaknesses under the bug standard to either the judge or the jury to allow the states now rely on acts that have neither been subjected to the serial process nor argue to the jury for a determination would make a mockery of the sum of Sumter's claim. Well, remind me of this then in your petition before the district court, did you make a claim as an element of error that the Kansas Court of Appeals overlooked ineffective assistance arguments that you had made? In other words, did you claim that the Kansas Court of Appeals should have should have found ineffective assistance of counsel in something other than the fact that it collapsed the standard? I'm pulling up my petition right now, but we did set out all of the ways in which the counsel is deficient. It went over two or three pages. OK, well, like I said, I'm not I can read. I can read. So I'll go back and find it. I just wondered whether you had a response. OK, any questions, further questions for petitioner at the week? OK, thank you. We appreciate the argument. It's very helpful. We will tack on. You have 30 seconds. We'll tack on a minute and we'll go from there, Mr. Wire. Thank you, Your Honor, I want to jump in on that that last point there, as you noted, the heaviest petitioner is required to point to specific errors or omissions by trial counsel in order to succeed on an ineffective assistance claim. It's not enough just to make general accusations about trial counsel's performance. And in this case, the added layer here is that at the state court level, it's considered issues that are not adequately briefed or or supported with relevant legal authority are considered waived and obeyed. Counsel, could I just jump in on that point? Everything you say may may be correct, but hasn't this been litigated on the basis that counsel's performance was deficient? The appeal has been about prejudice, not deficient performance. Correct, Your Honor, that the Kansas Court of Appeals and the Kansas District Court on the on the habeas petition decided the case. They skipped the performance aspect and went straight to prejudice, as Strickland instructs, as you can do and as is advisable when possible. So that's been our argument in response to that is that it was the Kansas Court of Appeals prerogative to do so, and that's the analysis has focused on that. So on the point of supporting your legal or your points with relevant legal authority at the state level, it would be any specific claims, maybe the jury instructions or other other particular aspects to trial. Counsel's actions would have been waived in the state court level and therefore procedurally defaulted. I see I'm out of time. I'll just wrap up and ask that this court reverse the district court finding that not all fair minded jurists would conclude the Kansas Court of Appeals unreasonably applied. Strickland's precious wrong.  Cases submitted, arguments were very helpful. We appreciate it, counsel. Thank you.